1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   KEITH PULLMAN,                          CASE NO. 11-CV-202 JLS (BLM)

12                          Plaintiff,        **ORDER: (1) GRANTING
                                              DEFENDANTS' REQUEST FOR**
13          vs.                               **JUDICIAL NOTICE; (2)
                                              GRANTING IN PART**
14                                            **DEFENDANTS' MOTION TO**
     ARNOLD SCHWARZENEGGER,                   **DISMISS**
15   MICHAEL CHRISMAN, RUTH
     COLEMAN, KATHY DICE, MARK                (ECF No. 3)
16   JORGENSEN, MICHAEL WELLS,
     RONILEE CLARK, SUSAN
17   MCLAUGHLIN, JAMES COLLINS, TARA
     LYNCH, et al.,
18
                          Defendants.
19

20          Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint, which

21   includes a request for judicial notice.  (ECF No. 3.)  Also before the Court are Plaintiff's

22   opposition (ECF No. 7) and Defendants' reply (ECF No. 8).  Having considered the parties'

23   arguments and the law, the Court **GRANTS** Defendants' request for judicial notice and **GRANTS**

24   **IN PART** Defendants' motion to dismiss.

25                                  **BACKGROUND**

26          Plaintiff Keith Pullman became concerned about the closing of a public road through the

27   Anza-Borrego Desert State Park ("the Park") by the California Department of Parks and

28   Recreation ("CDPR") and "initiated an investigation" beginning in July, 2008.  (Compl. ¶ 17, ECF

No. 1.)  Plaintiff claims he has "persistently but peacefully" sought to review and examine various records of the CDPR pertaining to this road closure, but was denied access to these records on multiple occasions.  (*Id.*)   Plaintiff entered the headquarters of the Park in March, 2009, and demanded a list of the names, badge numbers, and mailing addresses of the officers assigned to the Park.  (Compl. ¶ 21.)  Defendant Mark Jorgensen, while "visibly armed," instructed an employee not to provide the information to Plaintiff.  (Compl. ¶ 22.)  On February 25, 2009, March 19, 2009, and again on July 7, 2009, Defendant Tara Lynch, Acting Chief Counsel of CDPR, wrote to Plaintiff asking him to cease contacting employees of CDPR and to direct all future communications through her.  (Compl. ¶¶ 18, 23, 25.)  Defendant Lynch apparently also directed several CDPR employees to refuse to respond to Plaintiff's requests for public records.  Plaintiff made several subsequent attempts to inspect the Coyote Canyon Public Use Plan ("the Plan")  by making demands at various CDPR offices, but was not given access to the Plan at those times.

On November 24, 2009, Plaintiff entered the CDPR's office at the Colorado Desert District and requested to inspect the Plan.  (Compl. ¶ 36.)  Defendants McLaughlin and Collins refused to permit him to inspect the Plan at that time, and Defendant Collins ordered Plaintiff from the building.  (Compl. ¶¶ 37-39.)  Plaintiff claims Defendant Collins made "physical, harmful and offensive contact with Plaintiff in an attempt to force Plaintiff from the building" and pointed a canister of pepper spray at Plaintiff, threatening to spray him if he did not leave the building. (Compl. ¶ 40.)  Plaintiff states he "continues to fear serious bodily injury if he were to again attempt to contact or correspond with employees of . . . the CDPR, or again attempt to inspect or procure copies of public records of the  . . . CDPR."  (Compl. ¶ 48.)  Plaintiff submitted a claim to the California Victim Compensation and Government Claims Board on August 8, 2010, for damages arising out of the claims asserted in this complaint, which was rejected on September 23, 2010.  (Compl. ¶ 45.)

Of Plaintiff's six asserted causes of action, only the one brought under 42 U.S.C. § 1983 asserts a federal claim and the remaining five are brought under state law. Defendants' primary argument in favor of dismissal is that the Court should dismiss Plaintiff's sole federal claim for failure to allege a cognizable constitutional violation, and then decline to exercise supplemental

1  jurisdiction over the remaining claims brought under state law.  For the following reasons, the

2  Court agrees.

3                                         **LEGAL STANDARD**

4          Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that

5  the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a

6  motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and

7  sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain

8  statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not

9  require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-

10 defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937,

11 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a

12 plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

13 labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

14 *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a

15 complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*,

16 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

17         "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

18 accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*,

19 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts

20 pled "allow[] the court to draw the reasonable inference that the defendant is liable for the

21 misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must

22 be probable, but there must be "more than a sheer possibility that a defendant has acted

23 unlawfully."  *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible

24 entitlement to relief.  *Id.*  (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept

25 as true "legal conclusions" contained in the complaint.  *Id.*  This review requires context-specific

26 analysis involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation

27 omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

28 possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

1   entitled to relief.'"  *Id.*  Moreover, "for a complaint to be dismissed because the allegations give

2   rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading."

3   *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

4          Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court

5   determines that the allegation of other facts consistent with the challenged pleading could not

6   possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.

7   1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.

8   1986)).  In other words, where leave to amend would be futile, the Court may deny leave to

9   amend.  *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

10                                              **ANALYSIS**

11   **1. Defendants' Request for Judicial Notice**

12          Defendants move the Court to take judicial notice of proceedings related to Plaintiff's

13   actions before the California Victim Compensation and Government Claims Board.  This includes

14   an exhibit attached to Plaintiff's administrative claim, which consists of extensive documentation

15   of correspondence between Plaintiff and CPRA employees.

16          As a general rule, a district court "may not consider any material beyond the pleadings in

17   ruling on a Rule 12(b)(6) motion."  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994).

18   However, an exception to this general rule exists for "matters of public record."  *Mack v. South*

19   *Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986);  *see also Lee v. City of Los Angeles*, 240

20   F.3d 754, 774 (9th Cir. 2001) (stating that the district court may take judicial notice of undisputed

21   matters of public record, but not of disputed facts contained therein);  *see also* Fed. R. Evid. 201.

22          The Court finds that the documents are properly judicially noticed. *See United States ex*

23   *rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir.1992) ("We

24   may take judicial notice of proceedings in other courts, both within and without the federal judicial

25   system, if those proceedings have a direct relation to the matters at issue." (internal quotation

26   marks omitted)).  The documentation of Plaintiff's administrative claim is a matter of public

27   record, and Plaintiff does not dispute the authenticity of the documents, even citing to the facts

28   contained therein throughout his opposition to Defendants' motion to dismiss.  (*See, e.g.*, Pl's

1   Opp'n 2 (quoting from Defendant Lynch's February 25, 2009 letter, contained in Exhibit A of

2   Defendant's RJN.))  Accordingly, the Court **GRANTS** Defendants' request for judicial notice.

3   **2. Plaintiff's Claim under Section 1983**

4   Plaintiff's claim under 42 U.S.C. § 1983 alleges Defendants violated his rights under the

5   First and Fourteenth Amendment by "depriving Plaintiff of his rights of freedom of speech,

6   freedom to petition the Government and to inspect and procure copies of public records."  (Compl.

7   ¶ 56.)  In Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff clarifies that he actually

8   seeks to allege violations of his substantive due process rights under the Fourteenth Amendment

9   for assault, battery, and false imprisonment, and for denial of access to public facilities by various

10   employees of the CDPR acting under color of state law, which occurred "because Plaintiff was

11   attempting to exercise his First Amendment Rights."  (Pl.'s Opp'n 5, 8.)  In the event the Court

12   finds Plaintiff has not alleged sufficient facts to state a claim under 42 U.S.C. § 1983, Plaintiff also

13   seeks leave to amend.

14   42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges,

15   or immunities secured by the Constitution and laws" of the United States.  Section 1983 is not

16   itself a source of substantive rights, but merely provides a method for vindicating federal rights

17   elsewhere conferred.  *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  To state a claim

18   under 42 U.S.C. § 1983, Plaintiff must allege that: (1) that conduct he complains of violated a right

19   secured by the Constitution and laws of the United States; and (2) the conduct he complains of was

20   committed by a person acting under color of state law.  *Humphries v. County of Los Angeles*, 554

21   F.3d 1170, 1184 (9th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  The Court

22   examines each of these prongs in turn.

23   *(A)  Plaintiff Fails to State a Cognizable Constitutional Violation*

24   Here, Plaintiff's complaint sufficiently alleges Defendants were acting under color of state

25   law; thus, the sole issue is whether Defendants deprived Plaintiff of a federally protected right.

26   The complaint does not specifically identify which alleged facts give rise to a First or Fourteenth

27   Amendment claim or the precise nature of the constitutional violation.  The Court will liberally

28   //

1   construe Plaintiff's complaint, which broadly asserts violations under the First and Fourteenth

2   Amendments, and discuss Plaintiff's discernible theories under both Amendments.

3   *(i) First Amendment Claims*

4            The First Amendment protects a citizen's right to "freedom of speech" and to "petition the

5   Government for a redress of grievances."  U.S. CONST. amend. I.  Plaintiff alleges Defendants

6   interfered with these rights by "depriving Plaintiff of his rights of freedom of speech, freedom to

7   petition the Government and to inspect and procure copies of public records."  (Compl. ¶ 56.)

8   Because Plaintiff does not mention his First Amendment claims in his opposition to Defendants'

9   motion to dismiss, Defendants assert that Plaintiff has abandoned his First Amendment claims.

10  (Reply 4, ECF No. 8.)  However, the Court finds Plaintiff's opposition does not express a clear

11  intent to abandon all First Amendment allegations.  Although the opposition is admittedly

12  disjointed and seems to intertwine several unclear constitutional arguments based variously on the

13  First and Fourteenth Amendment, the Court reads Plaintiff's opposition as an assertion that the

14  allegations of First Amendment violations contained in his complaint rest on a theory of

15  retaliation.  Plaintiff states that his Section 1983 claim is based on "Defendants' assault, battery,

16  false imprisonment and deprivation of access to public facilities which occurred because Plaintiff

17  was attempting to exercise his First Amendment Rights."  (Pl.'s Opp'n 8.)[1]

18           Thus, to prevail on his Section 1983 claim, interpreted as a claim for retaliation in violation

19  of the First Amendment, Plaintiff must ultimately prove that Defendants' challenged conduct was

20  such that would chill or silence a person of ordinary firmness from future protected First

21  Amendment activities, and also that Defendants' desire to cause the chilling effect was a "but-for

22  cause" of the action.  *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-01 (9th Cir. 2008)

23  (citing  *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006)).  Courts have

24  noted that not all acts that are motivated by retaliation are so significant as to amount to a

25  constitutional violation.  *See, e.g.*, *Cole v. Sunnyvale*, 2010 WL 532428 (N.D. Cal. Feb. 9, 2010).

26  For example, when the retaliation consists of "only minor acts, such as 'bad-mouthing' that cannot

27

28           [1]Plaintiff's Opposition erroneously refers to his § 1983 claim as the Third Cause of Action.
         (Pl's Opp'n 8.)  The Court interprets these statements to apply to the Second Cause of Action.

reasonably be expected to deter protected speech," the action would not give rise to a First

Amendment retaliation claim. *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003). However,

the Ninth Circuit has suggested in *Rhodes v. Robinson*, 408 F.3d 559, 567 n.11 (9th Cir. 2005),

that Plaintiff need only allege that he or she was harmed by the government's actions, not the

actual chilling of future speech, in order to state a claim in a Section 1983 action:

> If [the plaintiff] had not alleged a chilling effect, perhaps his allegations that he
> suffered harm would suffice, since harm that is more than minimal will almost
> always have a chilling effect. Alleging harm *and* alleging the chilling effect
> would seem under the circumstances to be no more than a nicety. *See, e.g., Pratt
> v. Rowland*, 65 F.3d 802, 807 (9th Cir.1995) (deciding that alleged harm was
> enough to ground a First Amendment retaliation claim without independently
> discussing whether the harm had a chilling effect); *Valandingham v. Bojorquez*,
> 866 F.2d 1135, 1138 (9th Cir.1989) (same).

408 F.3d at 567, n. 11 (emphasis in original).

First, in order to find Plaintiff has stated a cognizable claim for retaliation, the Court must

determine whether the conduct Plaintiff was allegedly prevented from engaging in by Defendants'

actions constitutes a protected First Amendment activity. Defendants argue that Plaintiff's First

Amendment claim essentially amounts to a claim for violating California state law – the California

Public Records Act, Cal. Gov. Code § 6250, et. seq. "[T]he gravamen of the complaint is a

California state law CPRA claim, clothed in an ill-filling (*sic*) First Amendment Costume." (Defs.'

Mem. ISO Mot. 14.) According to Defendants' reasoning, Plaintiff's allegation that he was denied

access to CDPR records pertaining to the public road closing in the Park may state a cognizable

claim under the CPRA, but does not constitute a First Amendment violation.

The public has a limited, qualified right to inspect and copy public records and documents

that is grounded in the First Amendment and common law. *See United States v. Higuera-Guerrero

(In re Copley Press, Inc.)*, 518 F.3d 1022, 1029 (9th Cir. 2008) (citing *Nixon v. Warner Commc'ns,

Inc.*, 435 U.S. 589, 597 (1978)). This right does not guarantee an absolute ability to receive copies

of any public record or document on demand. Plaintiff's assertion that he attempted to access the

Plan on specific days and was not given immediate access to the Plan "at that time" thus do not

sufficiently indicate Plaintiff was engaged in a protected First Amendment activity. Plaintiff does

not allege that he was denied any access to inspect and copy the public records and documents he

1  requested, but instead merely states a series of incidents which seem to indicate he desired

2  unfettered access to records, which the First Amendment does not guarantee.  The documents

3  judicially noticed consist of extensive correspondence between Plaintiff and various CDPR

4  employees, documenting many records provided to Plaintiff, which Plaintiff does not dispute.  At

5  the motion to dismiss stage, the Court does not weigh evidence provided by the parties.  However,

6  as pled, Plaintiff's allegations of specific instances in which he was denied access to the Plan,

7  coupled with undisputed instances in which Plaintiff did receive many of the records he sought, do

8  not state a cognizable First Amendment claim.

9       For these reasons, Defendants' motion to dismiss Plaintiff's Second Cause of Action for

10  failure to state a claim under 42 U.S.C. § 1983 premised upon a violation of the First Amendment

11  is granted.  Plaintiff will be permitted an opportunity to attempt to plead facts in an amended

12  complaint that substantiates a violation effectuated by the denial of access to public records.

13  Further, as previously noted, Plaintiff must ultimately prove that Defendants' challenged conduct

14  was such that would chill or silence a person of ordinary firmness from future protected First

15  Amendment activities, and also that Defendants' desire to cause the chilling effect was a "but-for

16  cause" of the action.  At minimum, Plaintiff must allege that he was harmed by Defendants'

17  actions, *see Rhodes v. Robinson*, 408 F.3d at 567 n.11, and that a desire to cause a chilling effect

18  was a "but for" cause of Defendants' actions.[2]

19  *(ii) Fourteenth Amendment Claims*

20       In his opposition, Plaintiff also argues he has alleged a federal claim under 42 U.S.C. §

21  1983 because "an assault, battery, and the deprivation of access to public facilities violates the

22  Fourteenth Amendment."  (Pl's Opp'n 5.)  According to Plaintiff, it is "well established that

23

24  _____

    [2]The complaint states that "Defendant Collins made physical, harmful, and offensive contact

25  with Plaintiff in an attempt to force Plaintiff from the building.  Defendant Collins then pointed a
    canister of pepper spray at Plaintiff and threatened to spray Plaintiff if Plaintiff did not leave the

26  building.  Plaintiff, under threat of serious bodily harm, complied. . . . Plaintiff continues to suffer
    violations of his rights and continues to fear serious bodily injury if he were to again attempt to

27  contact or correspond with employees of the . . . CDPR, or again attempt to inspect or procure copies
    of public records."  (Compl. ¶¶ 40, 48.)  Even if this rises to the level cognizable as a retaliatory

28  action, the Court notes that Plaintiff has not even alleged, nor pleaded facts from which to reasonably
    infer, that the conduct was motivated by retaliation.  *See, e.g., Cole v. Sunnyvale*, 2010 WL 532428
    at *5 (N.D. Cal. Feb. 9, 2010).  Further, this alleged conduct only refers to actions taken by Defendant
    Collins.

1    § 1983 provides a remedy for one who has been the victim of an assault and battery at the hands of

2    a person acting under color of state law," and that the Fourteenth Amendment protects a person's

3    right to remain in a public place for a lawful purpose.  (*Id.* at 5, 7) (citing *Gregory v. Thompson*,

4    500 F.2d 59 (9th Cir. 1974)).  Additionally, Plaintiff argues that the complaint's allegations of

5    assault and the denial of access to public facilities by CPRA employees renders the complaint

6    sufficient, even though the Second Cause of Action does not mention these facts and proceeds

7    under a different First Amendment theory, discussed above.  (*Id.* at 7.)  Plaintiff argues that "a

8    complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff

9    erroneously relies on a different legal theory."  (*Id.*) (quoting *Haddock v. Bd. of Dental Examiners*

10   *of California*, 777 F.2d 462, 464 (9th Cir. 1985)).  The plaintiff in *Haddock* was pro se, which

11   impacted the court's decision to liberally construe the complaint.  However, the Court agrees that

12   even where, as here, Plaintiff is represented by counsel, Plaintiff's complaint should not be

13   dismissed if the facts alleged state a claim for a Fourteenth Amendment violation, even if not pled

14   explicitly as such.

15        But here, even liberally construed, Plaintiff's allegations do not support a cognizable claim

16   under the Fourteenth Amendment.  The fact that Plaintiff was ordered out of two park

17   headquarters by CDPR officers on two separate occasions, even if supported by some threat of

18   force, such as the threatened use of pepper spray (Compl. ¶¶ 29-40), does not state a violation of

19   Plaintiff's Fourteenth Amendment rights.  Not every use of force or threat of force by a state

20   employee constitutes a violation of a person's constitutional rights.  As the Supreme Court stated

21   in *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979), an action such as an assault, battery, or false

22   imprisonment, even though it might rise to the level of a state law tort, does not automatically

23   present a Section 1983 claim actionable in federal court:

24        The Fourteenth Amendment does not protect against all deprivations of liberty.  It
          protects only against deprivations of liberty accomplished "without due process of
25        law." . . . Section 1983 imposes liability for violations of rights protected by the
          Constitution, not for violations of duties of care arising out of tort law.  Remedy for
26        the latter type of injury must be sought in state court under traditional tort-law
          principles.  Just as "[m]edical malpractice does not become a constitutional
27        violation merely because the victim is a prisoner," *Estelle v. Gamble*, 429 U.S. 97,
          106 (1976), false imprisonment does not become a violation of the Fourteenth
28        Amendment merely because the defendant is a state official.

1    Defendants correctly point out that all of the cases to which Plaintiff cites in his opposition have

2    either been misconstrued or involve extreme uses of excessive force or at least the use of actual

3    force, coupled with a serious liberty interest. *See, e.g.*, *Bell v. State of Maryland*, 378 U.S. 226

4    (1964) (declining to rule on Fourteenth Amendment grounds where police officers forcibly

5    removed sit-in protesters from restaurant that refused to serve black people); *Dang Vang v. Toyed*,

6    944 F.2d 476 (9th Cir. 1991) (repeated rapes by state employee); *Gregory v. Thompson*, 500 F.2d

7    59 (9th Cir. 1974) (plaintiff forcibly removed from a courtroom by a justice of the peace);

8    *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (defendants pointed guns at

9    detained suspect's head while interrogating and threatening him).

10        Here, Plaintiff has not alleged he was detained or the victim of excessive force.  Instead, he

11   alleges he was ejected, under threat of force, from a public place in which he had a right to remain

12   and inspect records.  However, the requirements of due process "apply only to the deprivation of

13   interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of*

14   *Regents v. Roth*, 408 U.S. 564, 569 (1972).  The liberty guaranteed by the Fourteenth Amendment

15   is broad, but not unlimited.  *See Roth*, 408 U.S. at 572–73.  Plaintiff has not provided any authority

16   to support a finding that he has a constitutionally protected liberty interest in accessing the offices

17   of any public agency at any time he wishes or to make any demands he wishes in those offices.  As

18   discussed above with regard to Plaintiff's assertions under the First Amendment, his right to

19   inspect and copy public records is limited.

20        Thus, the Court finds Plaintiff has failed to state a Section 1983 claim even under a

21   Fourteenth Amendment theory, because he has not alleged a deprivation of a liberty or property

22   interest protected by the Constitution.  As previously noted, Plaintiff will be permitted an

23   opportunity to file an amended complaint that substantiates a violation effectuated by the denial of

24   his protected liberty interest without due process of the law.

25   *(B)  Claims Against Various Defendants Are Improper*

26        For the foregoing reasons, Plaintiff's allegations do not support a cognizable claim under

27   Section 1983 even when liberally construed.  However, because Plaintiff will be permitted leave to

28   amend his claim, the Court briefly addresses several Defendants against whom Plaintiff fails to

state a claim for the additional reason that they are improper Defendants in this action.

*(i)  State Officials in their Official Capacities*

A state official sued in his or her official capacity for damages is not a "person" for the purposes of Section 1983.  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).  The Supreme Court has determined that official-capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer.  *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Thus, a defendant sued in his or her official capacity possesses the same sovereign immunity as that governmental entity.

Here, Plaintiff sues Arnold Schwarzenegger in his official capacity as Governor of California, Michael Chrisman in his official capacity as Secretary of the California Natural Resources Agency (CNRA), and the remaining Defendants in their official capacities as various officials of the California Department of Parks and Recreation (CDPR).  Section 1983 does not express the requisite unequivocal intent to abrogate states' Eleventh Amendment immunity from suit.  *Quern v. Jordan*, 440 U.S. 332, 342 (1979).  As state agencies, these entities are all immune from damages suits under the Eleventh Amendment.  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Beentjes v. Placer County Air Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005).  Because the Eleventh Amendment bars Plaintiff's suit in this regard, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Section 1983 claim against all Defendants in their official capacities **WITH PREJUDICE**.

*(ii)  State Officials in their Individual Capacities*

A state official sued in his or her personal capacity is a "person" for the purposes of Section 1983.  *Hafer v. Melo*, 502 U.S. at 31; *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).  "Personal-capacity suits seek to impose personal liability upon a government official for actions [the official] takes under color of state law."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  The official in a personal-capacity suit may, depending on the facts, be able to establish immunity from claims for damages.  *Id.* at 166-67.  However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacity.  *Hafer v. Melo*, 502 U.S. at 30-31; *Porter*

1   *v. Jones*, 319 F.3d at 491.  The Court examines Plaintiff's Section 1983 claim against each set of

2   Defendants separately below.

3   (a)  Supervisory Defendants Schwarzenegger and Chrisman

4   Defendants argue that none of Plaintiff's allegations show that any of the supervisory-level

5   defendants acted in their individual capacities with respect to Plaintiff.  (Defs. Mem. ISO Motion

6   10.)  The Court agrees.  "Liability under [Section] 1983 arises only upon a showing of personal

7   participation by the defendant.  A supervisor is only liable for the constitutional violations

8   of . . . subordinates if the supervisor participated in or directed the violations, or knew of the

9   violations and failed to act to prevent them.  There is no respondeat superior liability under

10  [Section] 1983."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also*

11  *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007) (concluding

12  that allegations that school officials knew of alleged violation and failed to take corrective action

13  were sufficient to state a claim); *Ortez v. Washington County, State of Or.*, 88 F.3d 804, 809 (9th

14  Cir. 1996) (concluding proper to dismiss supervisors where no allegations of knowledge of or

15  participation in alleged violation).

16  Here, Plaintiff alleges that all Defendants are liable for the acts of the CDPR officers under

17  the doctrine of respondeat superior.  (Compl. ¶ 16.)  However, this theory of supervisory liability

18  fails to state a cognizable 1983 claim against the supervisory Defendants  (Schwarzenegger,

19  Chrisman, Coleman, Dice, Jorgensen, Wells, and Clark).  *Taylor v. List*, 880 F.2d at 1045.  As this

20  respondeat superior claim appears to be Plaintiff's only basis for suing Defendants

21  Schwarzenegger and Chrisman, the Court Plaintiff's Section 1983 claim against these Defendants

22  in their personal capacities is improper.

23  (b)  Director and Superintendant Defendants Coleman, Dice, Jorgensen, Wells, and Clark

24  "Because vicarious liability is inapplicable to *Bivens* and section 1983 suits, a plaintiff

25  must plead that each Government official defendant, through the official's own individual actions,

26  has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Here, Plaintiff's complaint

27  contains some allegations of actions taken by the director and superintendant Defendants

28  (Coleman, Dice, Jorgensen, Wells and Clark).  First, Plaintiff alleges that Defendants Coleman,

1   Dice, Jorgensen, Wells, Clark, McLaughlin, Collins and Lynch were "agents of each other and

2   conspired together to commit the wrongs described in this Complaint." (*Id.*) The complaint

3   further states that superintendant Defendants Wells and Clark "expressly directed" various other

4   Defendants to "enforce [Defendant] Lynch's demands" that all of Plaintiff's communications be

5   directed to Defendant Lynch. (Compl. ¶¶ 20, 28, 35.) Defendants Jorgensen and Dice allegedly

6   refused to permit Plaintiff from inspecting the Plan or prohibited a CDPR employee from

7   providing information to Plaintiff "while visibly armed." (Compl. ¶¶ 22, 31.)

8          "Conclusory allegations of a conspiracy without factual support are not sufficient to

9   maintain a claim under Section 1983." *Mistriel v. Kern County*, 2011 WL 864495 at *9 (E.D. Cal.

10  Mar. 10, 2011) (citing *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (finding plaintiff must

11  show an agreement among conspirators to deprive plaintiff of civil rights)). Here, Plaintiff has

12  pled no facts indicating the Defendants conspired to commit civil rights violations against him. He

13  has not even alleged an agreement, merely stating that some of the Defendants directed others to

14  "enforce [Defendant] Lynch's demands." At best, these allegations are conclusory, and the

15  complaint provides no facts indicating an agreement between Defendants. Although accepted as

16  true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative

17  level . . .," *Twombly*, 550 U.S. at 555, and Plaintiff's claim of conspiracy does not rise above pure

18  speculation. Because Plaintiff's conspiracy allegation appears to be his only further basis for suit

19  against Defendant Coleman, having alleged no specific actions taken by Defendant Coleman

20  herself, the Court Plaintiff's 1983 claim against Defendant Coleman in her individual capacity is

21  improper.

22         Plaintiff's allegations regarding Defendants Dice, Jorgensen, Wells, and Clark go a bit

23  further. Against Defendants Wells and Clark, Plaintiff seems to attempt a claim under a

24  supervisory liability theory by stating that these Defendants "expressly directed" various other

25  Defendants to "enforce [Defendant] Lynch's demands" that all of Plaintiff's communications be

26  directed to Defendant Lynch. (Compl. ¶¶ 20, 28, 35.) "To establish supervisor liability, Plaintiff

27  must provide facts to show that the supervisor either: (1) was personally involved in the alleged

28  violation of Plaintiff's constitutional rights; (2) knew the violations were occurring and failed to

1   act to prevent them; or (3) promulgated or implemented a deficient policy that was itself the

2   moving force for the violation of constitutional rights." *Mistriel*, 2011 WL 864495 at *14 (citing

3   *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

4          Against Defendants Jorgensen and Dice, Plaintiff seems to attempt a claim under a theory

5   of direct liability by stating that these Defendants allegedly refused to permit Plaintiff from

6   inspecting the Plan or prohibited a CDPR employee from providing information to Plaintiff "while

7   visibly armed." (Compl. ¶¶ 22, 31.) Plaintiff does not allege any facts indicating that Defendants

8   Jorgensen and Dice committed any violations in their supervisory capacity.

9          Without knowing more about the theory under which Plaintiff may state a cognizable

10  Section 1983 claim, the Court declines to further inquire here into whether Plaintiff may properly

11  bring such a claim against these Defendants. The same reasoning applies to Peace Officer

12  Defendants McLaughlin and Collins, and Acting Counsel Defendant Lynch, against whom

13  Plaintiff's claim must proceed, if at all, under a theory of direct liability.

14                                     **CONCLUSION**

15         For the reasons stated, Defendants' motion to dismiss is **GRANTED IN PART** as to

16  Plaintiff's second cause of action under Section 1983 only. This dismissal shall be without

17  prejudice, except as the claim applies to Defendants in their official capacities, *supra* pp. 10-11.

18  This Order dismisses the sole federal claim in this case, and the Court declines to exercise

19  supplemental jurisdiction over Plaintiff's state law claims. Thus, if Plaintiff is not able to state a

20  cognizable claim under Section 1983, the Court will remand the remainder of his claims to state

21  court. If Plaintiff wishes to continue litigating this case in federal court, he must file an amended

22  complaint addressing these deficiencies within 30 days of the date that this Order is electronically

23  docketed.

24         **IT IS SO ORDERED**.

25

26  DATED:  December 20, 2011

27                                      Janis L. Sammartino
                                        Honorable Janis L. Sammartino
28                                      United States District Judge

11cv202